**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


**JAMIE JACKSON, personal representative**
**of the Estate of James A. Stone, Deceased,**

           **Plaintiff,**

                                    **Case No.     05-74236**

**v.**

                                    **HONORABLE DENISE PAGE HOOD**

**THE CITY OF DETROIT,** *et. al.***,**

           **Defendant.**

    _____/

### DECISION AND ORDER REGARDING CERTAIN DISCOVERY

**I.     INTRODUCTION**

This matter is before the Court on Defendant's Motion for Protective Order to Prevent the

Deposition of City of Detroit Police Chief Ella-Bully Cummings, filed June 28, 2007. Plaintiff filed

a Response on July 13, 2007.[1]

**II.    FACTS**

The instant case concerns the death of James A. Stone while incarcerated at Detroit Police

Second Precinct on August 9, 2005. Plaintiff Jamie Jackson, Personal Representative of the Estate

of James A. Stone, brings the instant action against the City of Detroit and various officers in their

individual and official capacities, alleging: Violation of the Federal Constitution Against Defendants

City of Detroit, Chief Ella Bully-Cummings and Inspector Fred McClure (Count I); State Law Gross

Negligence (Count II); Intentional Infliction of Emotional Distress (Count III); Wrongful Death

---

[1] Plaintiff filed an Amended Response on July 15, 2007.

(Count IV); Violation of the Fourth, Eighth and Fourteenth Amendments and under 42 U.S.C. § 1983 as against the individual defendant officers (Count V).

## III.    APPLICABLE LAW AND ANALYSIS

Defendants object, pursuant to Fed. R. Civ. P. 26(c), to the taking of the deposition of Defendant Ella Bully-Cummings, Police Chief of City of Detroit.  Pursuant to Rule 26(c) - "Protective Orders", upon motion by a party from whom discovery is sought, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense".  Generally, "a party is entitled to depose a witness on all relevant issues to which the witness has knowledge." *Alliance For Global Justice, et. al. v. District of Columbia*, No. Civ.A.01-00811, 2005 WL 1799553, at *1 (D.D.C. July 29, 2005) (unpublished). However, courts have recognized the undue burden falling on public officials resulting from compulsion to attend depositions.  *Id.* (quoting *Springfield Terminal Ry. Co. v. United Transp. Union*, Civ. No. 89-0073, 1989 WL 225031, at *2 (D.D.C. May 18, 1989) (unpublished). Accordingly, "[t]here is substantial case law standing for the proposition that high-ranking government officials are not generally subject to depositions unless they have *some* personal knowledge about the mater and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Alliance For Global Justice*, 2005 WL 1799553, at *1 (quoting *Alexander v. F.B.I.*, 186 F.R.D. 1, 4 (D.D.C. 1998) (emphasis in original).  When moving for a protective order, the movant must establish good cause "by demonstrating the specific evidence of the harm that would result." *Id.* at *1 (quoting *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001).  Further, a party seeking a protective order preventing the deposition of an individual must establish a specific need for protection, as opposed to making conclusory or speculative

statements.  *Id.* at *1 (citing *Alexander*, 186 F.R.D. at 75)

Defendants assert that Plaintiff has received a voluminous amount of discovery, such that Plaintiff's counsel may proceed with the prosecution of his case without the need to take the deposition of Defendant Bully-Cummings.  Defendants acknowledge that Defendant Bully-Cummings is sued in her personal and official capacities, however, they argue that Plaintiff cannot demonstrate that the deposition of Defendant Bully-Cummings will yield information that cannot be obtained from other sources.  Specifically, Defendants point out that Defendant Bully-Cummings had no personal contact with decedent James Stone.  Defendants argue that Defendant Bully-Cummings performed "narrow activities" in this manner and it would be a waste of time for her to be cross-examined at a deposition.

Defendants further argue that the deposition of Defendant Bully-Cummings would be an "undue burden and annoyance," as it would significantly disrupt her official duties and would also set an unfair and unmanageable precedent.  Defendants assert that the court should take judicial notice that "high-level" executives such as Defendant Bully-Cummings "would be prevented from efficiently performing her job, if plaintiff attorneys could, 'cart blanc', take the Police Chief's deposition in cases where she <u>and</u> the City of Detroit are named as defendants." (Defs.' Mot. at 22) (emphasis in original).  *See Fitzpatrick v. Secretary of State*, 176 Mich.App. 615 (1989) (holding that "[d]epartment heads and other similarly high-ranking officials should not be compelled to personally give testimony by deposition unless a clear showing is made that such a proceeding is essential to prevent prejudice or injustice to the party who would require it or absent other compelling reasons . . . In determining whether a department head should be compelled to testify, a court must look at whether the information sought to be elicited can be obtained from a lesser

ranking official . . .") (internal citations omitted); *Union Savings Bank of Patchogue, New York v. Saxon*, 209 F.Supp. 319, 319-320 (D.D.C. 1962) (holding that because plaintiffs allege actions personal to Defendant Comptroller of the Currency, justice and reason require that plaintiff be allowed to take the deposition of defendant, however, limited to the procedural action that is the subject matter of the action). Defendants maintain that Plaintiff cannot make a "clear showing" that taking the deposition of Defendant Bully-Cummings is essential to prevent prejudice or injustice in Plaintiff's case-in-chief. Defendants maintain that "good cause" exists for the issuance of a protective order in the instant case.

Plaintiff argues that Defendants fail to point to any specific "good cause" stemming from the Rule 26 factors - annoyance, embarrassment, oppression, undue burden or expense. Plaintiff maintains that Defendant Bully-Cummings is personally involved in the matter, as exhibited by the memorandums between her and Commander Morris Wells discussing the details of the case and her personal direction that Commander Wells further investigate the matter. *See* Ex.'s A, B. Plaintiff argues that Defendant Bully-Cummings is the only individual who gave recorded direction to investigate Mr. Stone's death.

Plaintiff points to *Alliance for Global Justice*, wherein the court stated that there were only three ways in which the deposition of the Mayor of the District of Columbia could aid plaintiffs in establishing municipal liability of the District of Columbia for actions taken by police during the demonstrations:

> (1) that, in advance of the demonstrations, the Mayor was presented with the police's intended response to the demonstrators' activities and approved them; (2) that, after they occurred, the Mayor became aware of what the police had done and expressed his approval, thereby ratifying the behavior that the demonstrators condemn as illegal and unconstitutional; (3) that the police acted in a similar fashion in demonstrations that occurred before or even after the demonstration at issue and the Mayor

4

expressed his approval of their behavior or did nothing to change or modify it.

*Alliance for Global Justice*, 2005 WL 1799553, at *3. Plaintiff provides the Court with an in-depth discussion of the ways in which Defendant Bully-Cummings has personal knowledge of the subject matter of the case, the investigation and the inconsistencies in the language, reports and activity logs. (Pl.'s Resp. at 16-22, Ex.'s A, B) Namely, Plaintiff details the specific instructions given by Defendant Bully-Cummings to Commander Wells, as a part of the Final Administrative Review, to conduct a more thorough investigation of the circumstances surrounding Mr. Stone's death and to clarify the apparent inconsistencies in the report, witness statements and the officers' activity logs. In response, Commander Wells provided Defendant Bully-Cummings with references to pages and paragraph numbers in the report, as opposed to any single direct response to Defendant Bully-Cummings concerns. *See Id.* at 18; Ex. B. Plaintiff asserts that "there is no other person with the knowledge and information to speak regarding this investigation, its deficiencies, and the past policies and practices that the Department has adopted in similar matters." *Id.* at 20.

Plaintiff maintains that the reasons a deposition, rather than interrogatories, is necessary in this case is that each time another high-ranking official in the Detroit Police Department was deposed, they intentionally had not reviewed the relevant material and thus provided unresponsive answers. Plaintiff asserts that follow-up questions, as allowed by a deposition, are necessary to avoid non-responsive and evasive answers. Plaintiff also points out that, although there was a finding of sustained misconduct against Sergeant David Newkirk for his failure to document prisoner checks while on duty, no disciplinary action has been taken in this regard.

Plaintiff contends that the second two factors in *Alliance for Global Justice* are met with regard to Defendant Bully-Cummings. First, Plaintiff argues that Defendant Bully-Cummings

became thoroughly aware of the circumstances surrounding Mr. Stone's death. In line with *Alliance for Global Justice*, Plaintiff argues the officers' and investigators' actions, in negligently or intentionally conducting a poor investigation, were thereby ratified when Defendant Bully-Cummings ordered closure of the case. Second, Plaintiff argues that since the death of Mr. Stone, the police have acted in a similar fashion, as there are eight documented deaths of prisoners requesting medical attention and the Justice Department is conducting an ongoing investigation of the Detroit jails. Plaintiff further argues that the testimony of Defendant Bully-Cummings is necessary to prevent injustice because many department officials have participated in the cover-up of facts in the instant case.

Plaintiff has made a showing that Defendant Bully-Cummings has some personal knowledge of the facts at issue in the instant case. However, the Court is not persuaded that the information sought could not adequately be discovered through other means, such as interrogatories. Following the Court's discussion with the parties on July 23, 2007, the Court decided that Plaintiff is permitted to propound fifty (50) interrogatories upon Defendant Bully-Cummings. Plaintiff must also designate with particularity the documents, which should not exceed approximately twelve documents, that Defendant Bully-Cummings should review, prior to responding to the interrogatories.

As such, Plaintiff's Motion for a Protective Order is GRANTED, without prejudice to Plaintiff's right to depose Defendant Bully-Cummings upon petition to the Court. Following the utilization of alternative discovery tools, and upon a showing to the Court that the information can only be adequately discovered through a deposition, Plaintiff may further petition the Court to depose Defendant Bully-Cummings.

Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for a Protective Order **[Docket No. 39, filed June 28, 2007]** is GRANTED, without prejudice to Plaintiff's right to depose Defendant Bully-Cummings upon further petition to the Court, as noted in the above decision.

IT IS FURTHER ORDERED that Plaintiff is permitted to propound fifty (50) interrogatories upon Defendant Bully-Cummings.

IT IS ORDERED THAT Plaintiff must designate with particularity the documents, which should not exceed approximately twelve documents, that Defendant Bully-Cummings should review, prior to responding to the interrogatories.


s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge


DATED: August 1, 2007



I hereby certify that a copy of the foregoing document was served upon counsel of record on August 1, 2007, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager